Exhibit A

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR CHARLOTTE COUNTY, FLORIDA

CIVIL ACTION

**ANDREW BRYANT SHEETS,**
        Plaintiff.

CASE NO. 21001015CA

VS.

CITY OF PUNTA GORDA,
        Defendant.
_____/

## Order Vacating the Judgments of the Code Enforcement Board for the City of Punta Gorda, Florida

This appeal was heard at oral argument on August 4, 2022, based upon Appellant's, Andrew Bryant Sheets (Sheets) Notice of Appeal of four orders of the City of Punta Gorda Code Enforcement Board (on behalf of the City of Punta Gorda) all dated July 28, 2021 (Orders). The Orders are vacated.

## Summary of Ruling

This case is about pure political speech in the most public of forums. This type of speech has been given the highest level of protection under the First Amendment. Sheets was charged with four violations.

The first charge from June 9, 2021 alleged Sheets was wearing a t-shirt with the words "Fuck Policing 4 Profit," holding a flag that read "Fuck Trump," and holding a sign with a photograph of the Punta Gorda City Council on which the words "R Cunts" was written.

The second charge from June 12, 2021 alleged Sheets was wearing a t-shirt with the words "Fuck the Police" and holding a flag that read "Fuck Biden".

The third charge from June 22, 2021 was due to Sheets wearing a t-shirt bearing the words "Fuck the Police."

The fourth charge from June 26, 2021 was due to Sheets wearing a t-shirt bearing the words "Fuck Policing For Profit" and holding a flag that read "Fuck Biden."

This ordinance and this case are not about pornography, protecting children from pornography, obscenity, fighting words or other areas where the constitution has been interpreted to provide much more limited protection. Where this order uses "the word" it means "Fuck" or "Cunt". His signs, shirt and flags are referred to as "Items".

The City of Punta Gorda has embarked upon the task of protecting children. The record makes clear that city adopted the ordinance in hopes of advancing that goal. Punta Gorda argues that the ordinance is limited as it only applies to signs in public places which can be seen by children. In actual fact, that is no limitation at all.

As is relevant to this case, the ordinance bans signs that depict or describe sexual activities or organs. Fuck or Cunt can be about sex or not about sex, Sheets used Fuck as an interjection. By its express terms, the ordinance does not apply to the use of Fuck as an interjection. Sheets' items used Fuck to emphasize the passion and force of his political opinion and his use of the word had nothing to do with sex. The use of R Cunts is arguably within the express terms of the ordinance. But is similarly used as a political statement, not a reference to the sexual organ.

By applying the rules of constitutional avoidance, by its plain terms, the ordinance does not apply to Sheets' Items as they have nothing to do with sexual activities or organs. The court is required to adopt a reading of the ordinance which does not implicate constitutional concerns.

Given the implications for the parties, the possibility that I've over read the constitutional avoidance canons and the likelihood of appellate review, the court does rule that the ordinance violates Sheets' right to freedom of speech under the First and Fourteenth Amendments to the U.S. Constitution. Let's start with the Constitution itself.

The First Amendment, via the 14th Amendment provides that Punta Gorda:
**"Shall make no law... abridging the freedom of speech".**

In drafting the ordinance, the City reviewed, reflected and attempted to respect those nine words and the thousands of pages of court opinions interpreting those words.

By its plain language the ordinance violates the First Amendment but the case law makes it clear that Sheets has no absolute right to freedom of speech. Nonetheless, the cases that are most relevant make it necessary to vacate the Order in order to protect Sheets' free speech rights.

Although factually different in some respects, this case is squarely within the reasoning of Cohen v. California (Fuck the Draft jacket case) and the distinction between a criminal charge and a civil fine provides no basis to uphold the ordinance in this case.

The PACIFICA case (radio broadcast of George Carlin's Filthy Words) is the best case supporting the ordinance. The Supreme Court held that the First Amendment provides the lowest protection to broadcast media. The FCC, under the applicable statutes, could take action to punish broadcast of the filthy words, because children may hear it on the radio. The PACIFICA opinion states that if the FCC action was based on the political nature of the broadcast, the broadcast may well have been protected. Sheets' speech was purely political and in a public forum, not broadcast. Frankly, based on the more recent cases, PACIFICA, is an outlier opinion at this point in history and is difficult to square with the cases discussed below.

The other case relied upon by Punta Gorda, (GINSBERG) which prohibited the sale of certain magazines to children, was based upon obscenity concerns which is undisputedly not at issue in this case.

Given the most recent cases involving First Amendment challenges (Mahanoy, "Fuck school, Fuck cheerleading" case) and (Reed, municipal sign case) there can be little question that the U.S. Supreme Court jurisprudence has moved toward more protection for speech, not less.

# I think Thomas Jefferson would have said the more speech, the better.
*Antonin Scalia*

## The First Amendment

**"Congress shall make no law** respecting an establishment of religion, or prohibiting the free exercise thereof; or **abridging the freedom of speech**, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

## The Ordinance

Chapter 26, Article 11, Section 11.5, Punta Gorda Code provides,

> Unless as otherwise provided for in this Article, no person shall erect, display, wear, alter, maintain, or relocate any of the following signs in the City and such existing signs must be removed:...(z) Any sign which contains obscene language or graphics; and any sign containing fighting words or indecent speech which is legible from any public right-of-way or within any public space, and which can potentially be viewed by children under the age of 17. This provision includes signs or flags in or on any vehicle, vessel or on any apparel and accoutrements.

Chapter 26, Article 11, Section 11.4(a)(32), Punta Gorda Code defines the term *"Indecent speech" as "language or graphics that depict or describe sexual or excretory activities* or organs in a manner that is offensive as measured by contemporary community standards."* (Adopted June 2, 2021)(Emphasis added).

## Jurisdiction and Standard of Review

This is a direct appeal pursuant to Section 161.11, Florida Statutes. This Court has jurisdiction pursuant to Article V, Section 5(b), Florida Constitution and Rules 9.030(c)(1)(A), and 9.190, Fla.R.App.Pro. See also, *Holiday Isle Resort & Marina*

*Associates v. Monroe County*, 582 So.2d 721 (Fla. 3rd DCA 1991) ("[c]onstitutional claims…are properly cognizable on an appeal to the circuit court from a final order of an enforcement board taken pursuant to Section 162.11, Florida Statutes."). Pursuant to Section 162.11, Florida Statutes, this appeal "shall not be a hearing de novo but shall be limited to appellate review of the record created before the enforcement board."

In *City of Deerfield Beach v. Vaillant*, 419 So.2d 624, 626, (Fla. 1982), the Florida Supreme Court held, "Where a party is entitled as a matter of right to seek review in the circuit court from administrative action, the circuit court must determine whether procedural due process is accorded, whether the essential requirements of law have been observed, and whether the administrative findings and judgment are supported by competent substantial evidence."

## Facts

This is an appeal from four rulings of the Code Enforcement Board for the City of Punta Gorda, Florida. The hearing was held on July 28, 2021. Sheets was issued four citations in June 2021 alleging violations of the Ordinance due to displaying words which police officers considered to be indecent speech. Police issued the citations to Sheets on June 9, June 12, June 22, and June 26. The Board found that Sheets violated the City's sign ordinance on four separate occasions and thus imposed fines of $1,000 on the first charge and $500 on each of the other three charges, along with costs of $7.41 for each charge, by final Orders entered on July 28, 2021.

All four charges were based on a violation of the "indecent speech" provision of the Ordinance, and it was agreed that no charges were based on Sheets' language involving obscenity or fighting words. One officer noted that Sheets was "one-hundred percent cooperative . . . the entire time" when he received the citation. Sheets testified that none of the phrases were sexual, but were used to "express [the] depth of [his] anger and frustration with the government" as part of what he felt was "[his] duty as a citizen to confront this attempt to take away our freedom of speech."

The first charge from June 9, 2021 in Case No. 21-79906 was due to Sheets wearing a t-shirt with the words "Fuck Policing 4 Profit," holding a flag that read "Fuck Trump," and holding a sign 5 with a photograph of the Punta Gorda City Council on which the words "R Cunts" was written. The second charge from June 12, 2021 in Case No. 21-79908 was due to Sheets wearing a t-shirt with the words "Fuck the Police" and holding a flag that read "Fuck Biden." The third charge from June 22, 2021 in Case No. 21-79967 was due to Sheets wearing a t-shirt bearing the words "Fuck the Police." The

fourth charge from June 26, 2021 in Case No. 21-80024 was due to Sheets wearing a t-shirt bearing the words "Fuck Policing For Profit" and holding a flag that read "Fuck Biden." The Board found Sheets to be in violation on each of the four charges, but none of the Board's votes were unanimous.

## Rules of Constitutional Avoidance

Section II of Sheets' brief argues that this case can be disposed of based on the plain language of the ordinance and the items. The court should dispose of cases without getting to the constitutional issues where possible. Two rules which apply to this case:

'If a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.' Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 347 (1936). '(W)here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.' United States ex rel. Attorney General v. Delaware & Hudson Co. 213 U.S. 366, 408 (1909).

The interplay of the two rules is best explained from a section from a book I keep near my desk:

> "The constitutional-doubt canon is sometimes lumped together with the rule that 'if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.' Ashwandeer at 347. The two rules together are sometimes called the 'rules of constitutional avoidance.' (Footnote omitted). But it promotes clarity to keep the two separate. The constitutional-doubt canon is a rule of interpretation; the rule that statutory grounds will be considered first is a rule of judicial procedure. Often, but not always, both rules will be invoked in the same case: In the process of considering the statute first, the court may find that one of its interpretations must be rejected as constitutionally doubtful." Antonin Scalia and Bryan A. Garner, Reading Law: the interpretation of legal texts-1st ed. p.251.

The answer to application of both Canons starts with the simple question: do the Items describe or depict sexual activity or organs? Again, the ordinance provides: "Indecent speech" as "language or graphics that depict or describe sexual or excretory activities or organs in a manner that is offensive as measured by contemporary community standards."

The record in this case is undisputed: Sheets, subjectively, did not intend to depict sexual activities or organs but only express his political frustration.

That leaves the question, is there another basis to conclude that Sheets items described sexual activities or organs?

## Definitions and Current Usage of the Word

The Court has researched the current usage of the "Fuck" and found the following.

In terms of dictionary definitions, Fuck is "…sometimes used interjectionally with an object…to express anger, contempt, or disgust" Merriam-Webster (merriam-webster.com).

Fuck was also the subject of a recent Trademark and Appeal Board opinion which contained a detailed analysis of the current use of the word Fuck and its meanings. In Re Erik Brunetti, TTAB, Serial Nos. 8808426, 88308434, 88308451 and 88310900, (August 22, 2022). The opinion summarizes the current usage of the word Fuck in the context of whether Mr. Brunetti could trademark the word itself.

Spoiler: he cannot.

*The following is quoted from the opinion with citations and footnotes omitted and formatting changes to ease reading, page citations are from the opinion, not any reporter:*

> "…As to ubiquity, the Examining Attorney first relies on dictionary definitions and articles "from numerous internet websites and internet-based periodicals" to "illustrate[] that the term [FUCK] is commonly used as a versatile expression conveying a wide range of emotion, from disdain to joy." Consumers…therefore "would not perceive the use of the term as a mark identifying the source of Applicant's goods and/or services but rather as only conveying an informational message or sentiment":…
> Definitions:
> • Urban Dictionary (urbandictionary.com) defines FUCK as "a way to express extreme anger at a specific person."
> • American Heritage Dictionary (ahdictionary.com) defines FUCK, when used as a phrasal verb (e.g., fuck off), as a word "used in the imperative as a signal of angry dismissal."
> • Collins Dictionary defines FUCK, as an exclamation "used to express anger or annoyance."
> • Dictionary.com, based on the Random House Unabridged Dictionary (2021), defines FUCK as a slang or vulgar interjection "used to express anger, disgust, peremptory rejection, etc., often followed by a pronoun…
> • Wikipedia (Wikipedia.org) defines FUCK as "a profane English language word which often refers to the act of sexual intercourse but is also commonly used as an intensifier or to denote disdain. … In modern usage, the term fuck and its derivatives (such as fucker and fucking) can be used as a noun, a verb, an adjective, an interjection or an adverb."
> Articles:
> • An article from the Huffington Post (huffpost.com) titled "A F*cking Short History of the F-Word," dated May 29, 2013, provides a brief discussion of the word FUCK, from its derivation as an impolite term used to describe sexual intercourse in the 16th century, to an offensive swear word in the mid-19th century. "Only in the early to midnineteenth century did it begin to be used non-literally, as most swearwords are, to insult and offend others, to relieve pain, and to express extremes of emotion, negative and positive."
> • An article from Strong Language, A Sweary Blog About Swearing (stronglang.wordpress.com) titled "How 'fuck' went mainstream," dated October 22, 2015, shares an extract for an upcoming book From Skedaddle to Selfies: Words of the Generations by Allan Metcalf. According to the author, "[e]ven

major dictionaries declined to include fuck until quite recently, yet it now appears without fuss in an impressive range of cultural domains."

• An article from Vogue magazine (vogue.com) titled "The F-Word Is on the Effing Rise," dated August 6, 2019, discusses the growth in popularity of FUCK: "The public fucks are flowing freely because for many people, in a clime that has reached fever pitch, a freak or an eff simply does not capture the emotion of the gun-violence epidemic or the humanitarian crisis at the U.S. southern border. There is a sweet, satisfying release that only the F-bomb can bring."

• An article from The Roarbots (theroarbots.com) titled "John Scalzi on the Most Versatile Word in Any Language," dated April 7, 2020, 20 Id. at 180-181. 21 Id. at 11-19. 22 Id. at 151-154. 23 …describes many uses and meanings of the word FUCK. According to Scalzi, "'[f]uck' is a universal swear word"; "the word has existed in English since the 1500s at least"; "it's fuckin' useful" as a verb, a noun, an adjective, an interjection, and pretty much any part of speech you want it to be"; "it's a really fun word. It's easy to use, and gives a nice jolt to any sentence it's in"; and "its ubiquity is an argument for its use – because it's naturally part of our everyday speech…."

• An article from Medium (medium.com) titled "Why 'F*ck' Is the Word of the Year - How the word became a virtue signal in 2018," dated December 11, 2018, describes the ubiquitous nature of the word FUCK and how it has become overused…

• An article on the website of novelty retailer Spencers (spencersonline.com) titled "Why We Love the Word Fuck" describes FUCK as an "all-purpose word" and explains why it is used so frequently on the company's merchandise: [W]hy, exactly, is the word 'fuck' so special, and why does it appear on so many of our most popular t-shirts, hats, socks and even fleece blankets? Well, for one thing, fuck is an all-purpose word. You can use it say 'Fuck yeah' or 'That fucking sucks.' A parting shot of 'Go fuck yourself' or 'Fuck you' in an argument is the perfect way to signal how you really feel. No one can resist the lure of this ultimate naughty word. Even President John F. Kennedy has used the f word. … A little f-u-c-k adds just the right emphasis in our opinion. … It's impressive just how much power this short but mighty word holds in our society. … Why beat around the bush? You're a big fucking deal, so let everyone know it. Ultimately, the versatility of "fuck" is summed up in this t-shirt that we think really fuckin' says it all. Don't you? 25 Id. at 94-97….

…Based on this evidence, the Examining Attorney concludes that: The word "FUCK" is one of the most versatile words in the English lexicon – in certain contexts it is capable of provoking; in others, it conveys nothing at all, other than, perhaps, a sense of world-weariness … "[f]ew words in our ever-expanding language are as flexible or versatile." This speech intensifier, once seldom spoken in polite company, has so proliferated in vernacular and commercial usage as to render it common, popular and ordinary. And while the term can signal many meanings, its very ubiquity renders it incapable of serving as a source-identifier for trademark purposes…"Id at 14-17.

The Trademark and Appeal Board Concluded:

"The evidence in this case shows that the word FUCK is no ordinary word, but rather one that has acquired a multitude of recognized meanings since its first recorded use, and whose popularity has soared over the years, particularly in recent times, transforming what was once a taboo word to be spoken in hushed tones to one that is trendy and cosmopolitan. Although the word FUCK has been

"a choice word of artists, politicians, and musicians for centuries," "major dictionaries declined to include fuck until quite recently, yet it now appears without fuss in an impressive range of cultural domains." FUCK is used not only to describe sexual intercourse, but as a word intensifier "to express extremes of emotion, negative and positive" (e.g., shock), to note disdain, sadness, confusion, panic, boredom, annoyance, disgust, or pleasure; to insult or offend; and to evoke other emotions. FUCK is arguably one of the most expressive words in the English language – an "all-purpose word." We find that the record in this case amply demonstrates the ubiquity of the term FUCK as an expression to convey a wide-range of recognized concepts and sentiments, including those noted above. As quoted above, Applicant explicitly concedes the widely expressive quality of FUCK, and states that he "intends to use the FUCK mark" to "critique capitalism, government, religion and pop culture," because the "use of FUCK is integral to his viewpoint." Id at 38-39.

To sum up, for Trademark purposes, Fuck is ubiquitous and almost always means something other than sexual activity. For purposes of Sheets Items, it seems more likely than not, that in the years between Cohen, decided in 1971 and present day, the word is used more often as an interjection to express emotion rather than to depict or describe sexual activities.

Dictionary.com lists the definition" for "Cunt" is as follows:

## USAGE ALERT ABOUT CUNT

All senses of this word are vulgar slang and are very strongly tabooed and censored. The meanings that refer to a woman and a contemptible person are used with disparaging intent and are perceived as highly insulting and demeaning. There are many words used to refer to people in sexual terms. However, to call a person a cunt, especially a woman, is one of the most hateful and powerful examples of verbal abuse in the English language. See also gash[1].
*noun Slang: Vulgar.*
the vulva or vagina.
***Extremely Disparaging and Offensive.***

1. a contemptuous term used to refer to a woman.
2. a term used to refer to a contemptible person.
sexual intercourse with a woman.

Dictionary.com

Other online dictionaries do not meaningfully vary.

## Back to the Rules of Constitutional Avoidance

Based on the words of the ordinance, the actual words on Sheets' Items and current usage, Sheets did not describe sexual activity or organs by use of the word Fuck and therefore his items do not violate the ordinance. Applying the two canons referred to above, there is no need for constitutional analysis as the ordinance does not apply to Sheets' Items using the word Fuck.

The use of Cunt on the sign is a closer question but is a clear use of the word referring to the City Council as contemptable, not as a reference to the female anatomy.

If Sheets Items do trigger the ordinance, it does so in violation of the First Amendment. All the more reason, in light of the second canon, to not get to the issue but I feel compelled to allow full review without the necessity of remand.

## Constitutional Analysis

The parties have failed to provide any decided case that addressed whether an American with a sign criticizing the government, outside City Hall, with the word "Fuck" or "Cunt" can be punished by law. There is a case that says a person wearing a jacket criticizing the government with the word Fuck cannot be punished by law. Cohen v. California, 403 U. S. 15 (1971). Punta Gorda argues that the ordinance is narrowed because it only limits signs that can be seen by children. As a practical matter, this is no limitation at all. The following will address Cohen and the most relevant cases argued by the parties.

### Cohen v. California

The contention that the ordinance is constitutional here can be disposed of based on the holding and reasoning in Cohen v. California, 403 U. S. 15 (1971). Cohen wore a jacket bearing the words "Fuck the Draft". He was charged with disturbing the peace. The Court stated: "…the State certainly lacks power to punish Cohen for the underlying content of the message the inscription conveyed." Id at 18. Cohen's conviction for disturbing the peace was overturned as the limitation on his jacket was a violation of his right to freedom of speech.

The reasoning of the Court applies to this case:

"Additionally, we cannot overlook the fact, because it is well illustrated by the episode involved here, that much linguistic expression serves a dual communicative function: it conveys not only ideas capable of relatively precise, detached explication, but otherwise inexpressible emotions as well. In fact, words are often chosen as much for their emotive as their cognitive force. We cannot sanction the view that the Constitution, while solicitous of the cognitive content of individual speech has little or no regard for that emotive function which practically speaking, may often be the more important element of the overall message sought to be communicated. Indeed, **as Mr. Justice Frankfurter has said, '(o)ne of the prerogatives of American citizenship is the right to criticize public men and measures—and that means not only informed and responsible criticism but the freedom to speak foolishly and without moderation.'** Id at 26. (Emphasis added).

The Cohen Court explained in some detail why California's (and Punta Gorda's) efforts are unconstitutional:

> "Admittedly, it is not so obvious that the First and Fourteenth Amendments must be taken to disable the States from punishing public utterance of this unseemly expletive in order to maintain what they regard as a suitable level of discourse within the body politic. We think, however, that examination and reflection will reveal the shortcomings of a contrary viewpoint.
>
> At the outset, we cannot overemphasize that, in our judgment, most situations where the State has a justifiable interest in regulating speech will fall within one or

more of the various established exceptions, discussed above but not applicable here, to the usual rule that governmental bodies may not prescribe the form or content of individual expression. Equally important to our conclusion is the constitutional backdrop against which our decision must be made. The constitutional right of free expression is powerful medicine in a society as diverse and populous as ours. It is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, in the hope that use of such freedom will ultimately produce a more capable citizenry and more perfect polity and in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests.

To many, the immediate consequence of this freedom may often appear to be only verbal tumult, discord, and even offensive utterance. These are, however, within established limits, in truth necessary side effects of the broader enduring values which the process of open debate permits us to achieve. That the air may at times seem filled with verbal cacophony is, in this sense not a sign of weakness but of strength. We cannot lose sight of the fact that, in what otherwise might seem a trifling and annoying instance of individual distasteful abuse of a privilege, these fundamental societal values are truly implicated. That is why '(w)holly neutral futilities * * * come under the protection of free speech as fully as do Keats' poems or Donne's sermons,' Winters v. New York, 333 U.S. 507, 528, 68 S.Ct. 665, 676, 92 L.Ed. 840 (1948) (Frankfurter, J., dissenting), and why 'so long as the means are peaceful, the communication need not meet standards of acceptability.' Id at 23-25 (citations omitted).

Put simply, the Punta Gorda ordinance does not survive the holding nor reasoning of Cohen. The court feels compelled to show its math so it will address the analysis under the more recent U.S. Supreme Court cases.

**Reed v. Town of Gilbert, Ariz.**
The analytical framework for this case was summarized by Justice Thomas in Reed v. Town of Gilbert, Ariz., 576 U.S. 155,163 (2015):

> "The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.' U.S. Const., Amdt. 1. Under that Clause, a government, including a municipal government vested with state authority, 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.' Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. R.A.V. v. St. Paul, 505 U.S. 377, 395, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992); Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502 U.S. 105, 115, 118, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991).
>
> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. E.g.,

Sorrell v. IMS Health, Inc., 564 U.S. ——, —— – ——, 131 S.Ct. 2653, 2663–2664, 180 L.Ed.2d 544 (2011); Carey v. Brown, 447 U.S. 455, 462, (1980); Mosley, supra, at 95, 92 S.Ct. 2286. This commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys. Sorrell, supra, at ——––——, 131 S.Ct., at 2664. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

Our precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be " 'justified without reference to the content of the regulated speech,' " or that were adopted by the government "because of disagreement with the message [the speech] conveys," Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Those laws, like those that are content based on their face, must also satisfy strict scrutiny." Id.

In Reed, the Supreme Court struck down a city sign ordinance that made distinctions based on content, some signs were limited and some were not.

Under this analysis, the ordinance in this case is content based and must be narrowly tailored to serve compelling state interests. Furthermore, the court finds that the ordinance is not content neutral.

Punta Gorda argues that the ordinance is content neutral because it prohibits all signs depicting sexual activities or organs. "But it is well established that "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." Consolidated Edison Co. of N.Y. v. Public Serv. Comm'n of N. Y., 447 U.S. 530, 537, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980) " Id at 169.

As in Reed, the Punta Gorda ordinance imposes content-based restrictions on speech and those provisions can stand only if they survive strict scrutiny. Strict scrutiny requires Punta Gorda to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.

In this case Punta Gorda argues only one compelling governmental interest: protection of children, specifically, only children that can read.

Punta Gorda has the burden to demonstrate that the ordinance furthers this compelling governmental interest and is narrowly tailored to that end. See, Reed at 171.

On this record it is hotly disputed by the parties, was of some dispute between board members at the hearings and is ultimately doubtful that the ordinance protects children. For purposes of the ordinance, children would include age birth to their 17th birthday. As applied to Sheets, because the ordinance only covers signs with depictions and written communication that can be viewed by children, an ability to read is inherent. This makes protection of infants and toddlers irrelevant. At the upper end of the age range, Punta Gorda has not shown that protection of teenagers from widely used words, which have extensive non-sexual usage (see the Trademark Trial and Appeal Board

Opinion) protects that age range. There is a much more limited set of children that can be protected than the ordinance covers.

The ordinance is under inclusive and over inclusive. The ordinance prohibits speech that the record reflects was never seen by children. Punta Gorda claims that the limitation to places where children under 17 may see the signs is a narrow limitation. It is not. Children may be present anywhere in Punta Gorda and therefore that term is no limitation at all. The ordinance does not prohibit use of verbal indecency and that is a means of communication that many more children could understand.

The Punta Gorda ordinance is overbroad as it was actually designed to cause the preemptive self-silencing of speakers whose messages are entitled to constitutional protection. See, Reno v. ACLU, 521 U.S. 844 (1997). Whether termed vague or overbroad, the ordinance fails for the same reasons as the Statute in Reno.

Punta Gorda may go a long way toward entirely forbidding signs so long as it does so in an evenhanded content-neutral manner. Id at 173. One look at Justice Alito's concurrence in Reed provides many suggestions. See, Id at 174-175.

Punta Gorda's ordinance does not survive strict scrutiny as it is a content based law which prohibits Sheets' speech based on the content and without being narrowly tailored to protect children.

## Mahanoy Area School District v. B.L.

Only last year the U.S. Supreme Court ruled that children have the right to freedom of speech, which includes a child publicly using vulgar language. Mahanoy Area School District v. B.L., 141 S.Ct. 2038 (2021). In that case, a minor, B. L. posted an image which showed B. L. and a friend with middle fingers raised; it bore the caption: "Fuck school fuck softball fuck cheer fuck everything". The school suspended her from the cheerleading squad and she challenged it all the way to the U.S. Supreme Court.

The Court explained: "It might be tempting to dismiss B. L.'s words as unworthy of the robust First Amendment protections discussed herein. But sometimes it is necessary to protect the superfluous in order to preserve the necessary. See Tyson & Brother v. Banton, 273 U.S. 418, 447, 47 S.Ct. 426, 71 L.Ed. 718 (1927) (Holmes, J., dissenting). "We cannot lose sight of the fact that, in what otherwise might seem a trifling and annoying instance of individual distasteful abuse of a privilege, these fundamental societal values are truly implicated." Cohen, 403 U.S., at 25, 91 S.Ct. 1780. Mahanoy at 2048.

In his concurring opinion Justice Alito observed:

> "At the other end of the spectrum, there is a category of speech that is almost always beyond the regulatory authority of a public school. This is student speech that is not expressly and specifically directed at the school, school administrators, teachers, or fellow students and that addresses matters of public concern, including sensitive subjects like politics, religion, and social relations. Speech on

such matters lies at the heart of the First Amendment's protection, see *Lane v. Franks*, 573 U.S. 228, 235, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014) ("Speech by citizens on matters of public concern lies at the heart of the First Amendment"); *Schenck v. Pro-Choice Network of Western N. Y.*, 519 U.S. 357, 377, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997) ("Leafletting and commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment"); *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 760, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) ("[A] free-speech clause without religion would be Hamlet without the prince"); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) ("[A]dvocacy of a politically controversial viewpoint ... is the essence of First Amendment expression"); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) ("At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern"); *Connick v. Myers*, 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) ("[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection" (internal quotation marks omitted)), and the connection between student speech in this category and the ability of a public school to carry out its instructional program is tenuous." *Id* at 2055.

The court concludes that the ordinance is unconstitutional if applied to the very children Punta Gorda is seeking to protect. How can it be applied to Sheets?

**Other Cases**

Punta Gorda cites several cases in support of the constitutionality of the ordinance. Those cases do not support a finding that the ordinance is constitutional.

First, there is no colorable claim that the ordinance seeks only to ban obscenity under *Miller v. California*, 93 S. Ct. 2607 (1973) so that holding and reasoning of that case does not save the ordinance.

Likewise, as applied to Sheets' Items, there is no claim that the ordinance prohibits only the provision or display or involvement in pornography or obscene materials involving children. *United States v. Williams*, 128 S.Ct. 1830 (2008); *Ginsberg v. State of New York*, 88 S. Ct. 1274 (1968); *Erznoznik v. City of Jacksonville*, 95 S.Ct. 2268 (1975); *Sable Comm. Of Calif., Inc. v. F.C.C.*, 109 S.Ct. 2829 (1989); *Denver Area Educational Tel. Con. V. FCC*, 116 S.Ct. 2374 (1996).

Finally, Punta Gorda argues that *Federal Comm. Commission v. Pacifica Foundation*, 438 U.S. 726 (1978) supports the ordinance in this case. That case involved the Filthy Words monologue by George Carlin which was broadcast by Pacifica at about 2 p.m. on a Tuesday afternoon. The case held that indecent speech, which was broadcast, could be limited by the FCC under the applicable statutes. The Court's holding was specifically limited as follows:

> The question in this case is whether a broadcast of patently offensive words dealing with sex and excretion may be regulated because of its content. Obscene materials have been denied the protection of the First Amendment because their content is so offensive to contemporary moral standards. *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. But the fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection. For it is a central tenet of the First Amendment that the

government must remain neutral in the marketplace of ideas. *If there were any reason to believe that the Commission's characterization of the Carlin monologue as offensive could be traced to its political content—or even to the fact that it satirized contemporary attitudes about four-letter words—First Amendment protection might be required.* But that is simply not this case. These words offend for the same reasons that obscenity offends. Their place in the hierarchy of First Amendment values was aptly sketched by Mr. Justice Murphy when he said: "Such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Chaplinsky v. New Hampshire, 315 U.S., at 572, 62 S.Ct., at 769. (Footnotes omitted, emphasis added), Id at 745.

Sheets' Items were political statements critical of local and national leaders and are protected speech, within the rational of what would be protected even under Pacifica.

Other cases support the conclusion that the ordinance is unconstitutional: See, Wood v. Eubanks, 25 F. 4th 414 (6th Cir. 2022)(Fuck the Police shirt); Baker v. Glover, 776 F. Supp. 1511 (M.D. Ala. 1991)(1-800-EAT-SHIT); Spears v. State, 337 So.2d 977 (Fla. 1976)(vulgar language lacking sexual undertones).

Even giving Pacifica (1978), full affect, it appears that Cohen and the more recent cases require the Court to find that the Sign is protected speech.

In sum, Punta Gorda's municipal heart is in the right place but there does not appear to be a constitutionally valid way to protect children from seeing (or displaying!) political signs with the word.

**America has believed that in differentiation, not in uniformity, lies the path of progress. It acted on this belief; it has advanced human happiness, and it has prospered.**
*Louis D. Brandeis*

For the above stated reasons the ordinance does not pass constitutional muster and the Orders are vacated. Done and ordered this 26th day of September, 2022

eSigned by GENTILE, GEOFFREY H in 21001015CA
on 09/26/2022 20:16:34 qjPjXwRC

David M Levin <dlevin@icardmerrill.com>, <evirgin@icardmerrill.com>
Phares Heindl <pmheindl@heindllaw.com>
Phares M Heindl <pmheindl@gmail.com>, <pmh@heindllaw.com>
Attorney General State of Florida eservice <oag.civil.eserve@myfloridalegal.com>
PHARES HEINDL <PMHEINDL@HEINDLAW.COM>
ANDREW BRYANT SHEETS <SHEETS4SHERIFF@GMAIL.COM>