UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW BRYANT SHEETS,

       Plaintiff,

    v.

                                          Case No. 2:25-cv-493-KCD-DNF

DAVID JOSEPH LIPKER, IN
PERSONAL CAPACITY; AND
CITY OF PUNTA GORDA,

       Defendants.

_____/

## **ORDER**

This case is about words—specifically, a four-letter expletive that has vexed legal authorities and amused teenagers for generations. Plaintiff Andrew Sheets, proceeding pro se, alleges that Officer David Joseph Lipker violated his First Amendment rights by citing him for displaying signs bearing the word "Fuck" in a public place. (Doc. 41.)[1] Defendants now move to dismiss, arguing that the complaint is a shotgun pleading, that Officer Lipker is entitled to qualified immunity, and that the challenge to the underlying ordinance is moot. (Doc. 43.)

We construe pro se pleadings liberally. But even without that generous standard, the constitutional principles at stake here are not new. Over fifty

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

years ago, the Supreme Court made clear that the government cannot criminalize the simple public display of this particular four-letter word. *See Cohen v. California*, 403 U.S. 15 (1971). Because that right was clearly established long before Officer Lipker wrote his ticket, the motion to dismiss the First Amendment claims is **DENIED**. However, because the ordinance in question has already been wiped from the books, Sheets's facial challenge to the law is **DISMISSED** as moot.

## I. Background

Because this case is before the Court on a motion to dismiss, we accept the factual allegations in the complaint as true. Back in 2021, Sheets stood on a public sidewalk in Punta Gorda. He was there to protest. To make his point, he displayed two flags: one reading "Fuck Trump" and the other "Fuck Biden." He also wore a shirt emblazoned with the phrase "Fuck Policing 4 Profit." (*See* Doc. 41 at 5.)

Officer David Joseph Lipker approached Sheets and issued him a citation for violating City Ordinance 26-11.5(z), which prohibited the public display of obscene signs. The citation was allegedly issued because of the language Sheets displayed, and Defendants do not contend otherwise. (Doc. 41 at 5.) Lipker then ordered Sheets to leave the sidewalk. Sheets complied, packed up his flags, and left. (*Id.*)

Sheets responded with this lawsuit, which alleges that the citation was viewpoint discrimination and retaliation in violation of the First Amendment (Counts I and II) and challenges the ordinance as facially unconstitutional (Count III). Officer Lipker and his employer, the City of Punta Gorda (collectively "Defendants"), have moved to dismiss the complaint. (Doc. 43.)

## II. Standard of Review

"To survive a Rule 12(b)(6) motion, a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A motion to dismiss fails where the complaint provides facts that raise a right to relief above the speculative level. *Id.*

## III. Discussion

Defendants press three primary arguments. First, they contend that Sheets's complaint is a "shotgun pleading" that fails to give them fair notice of the claims alleged. (Doc. 43 at 3-5.) Second, they assert that Officer Lipker is entitled to qualified immunity because he was merely enforcing a City

3

ordinance that was still on the books. (*Id.* at 5-11.) Finally, they argue that Sheets's facial challenge to the ordinance is moot because the City has since repealed it. (*Id.* at 11-13.) These issues are taken in turn.

## A. Shotgun Pleading

The shotgun pleading doctrine is designed to prevent complaints that are so vague, disjoined, or repetitive that a defendant cannot figure out what they are being sued for. It is not a formalistic trap to snare pro se litigants who fail to draft with the precision of a seasoned partner at a white-shoe firm. *See, e.g.*, *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019).

Defendants argue that Sheets committed a technical foul by incorporating prior factual allegations into each subsequent count, creating a domino effect of repetition. In a case involving a complex web of defendants and claims, such repetition might indeed make a responsive pleading impossible. But that is not the case here. The core of Sheets's complaint is lucid: he held a sign with a bad word; the officer cited him for it; he thinks the Constitution forbids that. Defendants know exactly what incident is at issue and what legal theories Sheets is advancing. The self-evident purpose of Fed. R. Civ. P. 8 is to give the defendant fair notice of the claim. Sheets has done that. Defendants' motion to dismiss the complaint as a shotgun pleading is thus denied. *See, e.g.*, *Green v. Miami-Dade Cnty.*, No. 08-20016-CIV, 2008 WL

4

11333589, at *1 (S.D. Fla. Oct. 16, 2008); *Aria Dental Grp., LLC v. Farmers Ins. Exch.*, 528 F. Supp. 3d 1359, 1363 (M.D. Ga. 2021).

### B. First Amendment Claims

Sheets advances two distinct theories under the First Amendment: viewpoint discrimination and retaliation. (Doc. 41 at 11-12.) A viewpoint discrimination claim arises when the government targets speech because of the specific ideology or perspective the speaker advocates. *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019). "The prohibition against viewpoint discrimination is firmly embedded in first amendment analysis." *Otto v. City of Boca Raton, Fla.*, 981 F.3d 854, 864 (11th Cir. 2020). A retaliation claim, by contrast, requires (1) speech or activity protected by the First Amendment, (2) adverse action, and (3) causal connection between the protected speech or activity and the adverse action. *Turner v. Williams*, 65 F.4th 564, 579 (11th Cir. 2023). "We recognize First Amendment retaliation claims because [t]he Amendment protects not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Id.* at 579-80.

As for these claims, Officer Lipker first leans on qualified immunity. (Doc. 43 at 5-7.) Qualified immunity shields government officials from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Lipker argues that because the City had an ordinance

on the books prohibiting obscene speech, he was simply enforcing the law. (Doc. 43 at 7.) He relies on the principle that police are generally charged to enforce laws until they are declared unconstitutional. *See Sanchez v. City of S. Miami*, No. 12-24227-CIV, 2013 WL 1729373, at *5 (S.D. Fla. Apr. 22, 2013) ("The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality[.]").

This argument hits a few roadblocks. First, Officer Lipker's attempt to shift the blame for his conduct to the statute's text is unpersuasive. He was not merely a conduit for the City's will, enforcing its black-letter law. The ordinance he cited did not list the word "fuck" as a prohibited term. Instead, it used the nebulous categories of "obscene language" and "indecent speech." *See Berry v. Smith*, No. 2:25-CV-299-JES-NPM, 2025 WL 3906027, at *2 (M.D. Fla. Dec. 3, 2025) (outlining City Ordinance 26-11.5(z) and reprinting the statute). This vague language required Officer Lipker to make a judgment call: he had to look at the word on the flags and decide if it fit the legal definition of obscenity or indecency. That decision was his alone, and as discussed below, it was plainly wrong. By interpreting the statute to prohibit a word that the Supreme Court has long held to be neither obscene nor indecent in this context, Officer Lipker did not passively enforce the law—he actively expanded it to encroach upon protected territory. He cannot now hide behind the text of a

statute that never explicitly authorized his specific unconstitutional application.

Second, while officers are generally entitled to assume that the laws they are charged to enforce are valid, this reliance has limits. The Supreme Court has carved out an exception for laws that are "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). In other words, the mere existence of a statute does not automatically confer immunity if the statute is transparently invalid under clearly established law. This is such a case.

Long ago, the Supreme Court settled the question of whether the government may act as the guardian of public morality by banishing the word Fuck from the public square. In *Cohen v. California*, the Court considered the conviction of a man who walked through a courthouse corridor wearing a jacket bearing the words "Fuck the Draft." 403 U.S. at 16. The State of California argued, much as Officer Lipker decided here, that such language was offensive conduct that disturbed the peace. The Court disagreed. It held that the "simple public display" of this "single four-letter expletive" could not be made a criminal offense consistent with the First Amendment. *Id.* at 26. The Constitution, the Court explained, leaves matters of taste and style largely to the individual, recognizing that "one man's vulgarity is another's lyric." *Id.* at

25. In the decades since, the law has been made clear: the state may not censor a citizen for public display of the word "fuck." *See Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180, 191 (2021).

An officer cannot close his eyes to decades of settled constitutional precedent simply because a municipal ordinance has not yet been formally struck down. When a law purports to criminalize conduct that the Supreme Court has explicitly held to be protected—like the display of a four-letter expletive in a political protest—a reasonable officer should know that the ordinance cannot be enforced as he is interpreting it. So, qualified immunity is off the table here. *See Berry*, 2025 WL 3906027, at *2 (rejecting qualified immunity defense under same ordinance where officer cited a protestor for carrying a sign that displayed "PUNTA GORDA FUCKING FIRST AMENDMENT"); *Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005) ("We conclude that the law was clearly established at the time of the defendants' alleged actions that retaliation against private citizens for exercising their First Amendment rights was actionable.").

Setting qualified immunity aside and turning to the merits, Officer Lipker argues that the retaliation claim fails on its face because he lacked the requisite retaliatory motive. "[A] plaintiff pursuing a First Amendment retaliation claim must show that the adverse action would not have been taken absent the retaliatory motive." *Muszik v. Town of Redington Shores*, No. 8:22-

CV-2387-CEH-SPF, 2024 WL 2273187, at \*14 (M.D. Fla. May 20, 2024). "To establish a causal connection, a plaintiff must demonstrate his or her protected conduct was a motivating factor behind the alleged retaliatory misconduct." *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1323 (S.D. Fla. 2014).

As Officer Lipker tells it, his subjective motivation was not to target Sheets's protected speech, but merely to enforce the City's ordinance. (Doc. 43 at 8-9.) This point might have merit if the City Council had passed a law explicitly forbidding the display of the word "fuck." In that hypothetical scenario, an officer could claim he was simply executing a clear legislative command, however misguided. But that is not this statute. The ordinance here did not proscribe specific words; it proscribed "indecent" and "obscene" ones. It left the definition of those terms to the officer on the street. By choosing to categorize Sheets's political signs as indecent—despite decades of precedent declaring them protected—Officer Lipker cannot claim he was motivated by anything other than the protected speech.

"In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). This is not a case where we must guess at the officer's mindset. Officer Lipker did not cite Sheets for jaywalking or loitering; he cited him *because* of the words on his flags. When the alleged crime is the speech

itself, the causal link between the protected activity and the adverse action is undeniable. Officer Lipker saw the speech, decided it was indecent, and issued a ticket to stop it. That is the definition of being subjectively motivated by the content of the speech. And here, the speech is constitutionally protected.

Finally, the Defendants argue that Sheets suffered no actionable injury because he received only a warning and was back to protesting a few days later. (Doc. 43 at 11.) This argument mistakes resilience for a lack of injury. The test for First Amendment retaliation is objective: would the official's conduct deter a "person of ordinary firmness" from exercising their rights? *Bailey v. Wheeler*, 843 F.3d 473, 481 (11th Cir. 2016). It does not matter that Sheets himself was not permanently silenced. *See Muszik v. Town of Redington Shores*, No. 8:22-CV-2387-CEH-SPF, 2024 WL 2273187, at *13 (M.D. Fla. May 20, 2024). For the average citizen, being confronted by a uniformed police officer, issued a citation for indecency, and ordered to vacate a public sidewalk is a frightening experience that would undoubtedly chill future speech. Those are the facts alleged here. (Doc. 41 at 5); *see Neal v. Dekalb Cnty., Georgia*, No. 1:16-CV-184-WSD, 2016 WL 3476873, at *5 (N.D. Ga. June 27, 2016) ("An arrest or citation would deter a person of ordinary firmness from exercising his First Amendment rights."); *see also Locker v. City of St. Florian*, No. CV-08-S-907-NW, 2009 WL 10703405, at *6 (N.D. Ala. Oct. 27, 2009).

10

Moreover, the Supreme Court has explicitly rejected the notion that a temporary deprivation of speech is too trivial to matter. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Sheets alleges that Officer Lipker's order forced him to terminate his protest and leave the scene immediately. (Doc. 41 at 5.) Being compelled by the state to pack up one's political dissent and exit the public square is a deprivation of liberty, not a mere inconvenience. That effective silencing, however brief, is an injury the Constitution recognizes. *See KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1261 (11th Cir. 2006) (explaining that "nominal damages are . . . appropriate in the context of a First Amendment violation," even where the plaintiff "suffers no compensable injury").

Officer Lipker asks for a free pass because he was enforcing an ordinance, but he enforced it against speech that has been protected for generations. He argues he did not mean to retaliate, but his citation targeted the very words he determined offensive. And he claims no harm was done, even though he silenced a citizen in the public square. None of these defenses hold water at this stage. When Officer Lipker cited Sheets for the content of his speech, he crossed a constitutional line that was drawn long ago. Consequently, his motion to dismiss Counts I and II is denied.

11

## C. Facial Challenge to Ordinance 26-11.5(z)

Sheets's final claim is a facial challenge to the City's sign ordinance. (Doc. 41 at 15-16.) He argues that the ordinance facially targets protected speech and is thus unconstitutional. Defendants respond that this claim is moot because the ordinance is nonexistent and has been "off-the-books" since a state court declared it unconstitutional. (Doc. 43 at 13.)

A facial challenge is a distinct legal animal. Unlike an as-applied challenge, which argues that a law was unconstitutionally enforced against a specific individual in a specific instance, a facial challenge attacks the law itself. It asserts that the statute is so fundamentally flawed—whether because it is overbroad, vague, or content-based—that it cannot validly exist. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). The remedy for a successful facial challenge is not just compensation for the plaintiff, but the total invalidation of the statute, effectively wiping it from the books for everyone. *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000).

When a municipality voluntarily repeals a challenged ordinance and there is no reasonable expectation it will return, a facial challenge to that ordinance becomes moot. *Kravchenko v. Town of Redington Beach, Fla.*, No. 8:22-CV-2617-MSS-SPF, 2025 WL 2943000, at *11 (M.D. Fla. Aug. 8, 2025). The logic is simple: a facial challenge seeks to enjoin the enforcement of a law to prevent future harm. So if the law is already gone, there is nothing left for

the court to enjoin. While the past enforcement of the ordinance keeps the damages claim alive (as discussed above), Sheets's request to strike down the text of the ordinance today is a request to nullify a nullity. Since Sheets admits the ordinance is now nonexistent, there is no live controversy regarding its facial validity.

Sheets does mention that the City provides no guarantee the ordinance will stay dead, invoking the doctrine that a claim is not moot if it is "capable of repetition, yet evades review." (Doc. 44 at 11.) But to overcome a finding of mootness when a government repeals a law, a plaintiff needs more than a hunch. Courts generally treat government officials with a degree of solicitude, presuming that when they repeal a statute—especially one already struck down by a state court—they do not intend to immediately reenact it. *See Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004). Sheets has no evidence of a secret plan to bring the ordinance back; he offers only the theoretical possibility that it could happen. Because the ordinance was repealed following a judicial determination of unconstitutionality, the likelihood of its return is vanishingly small. Mere speculation cannot keep a controversy alive. *See Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998).

## IV. Conclusion

Civility is a virtue, but it is not a legal requirement for political protest. When Officer Lipker cited Sheets for his choice of vocabulary, he ignored well-settled precedent protecting the very speech he sought to punish. He is not entitled to qualified immunity for that error. However, because the City has wisely retreated from the ordinance that started this dispute, there is no longer a law for this Court to enjoin. We therefore let the claims against Officer Lipker proceed (Counts I & II) while burying the facial challenge (Count III). Defendants' Motion to Dismiss (Doc. 43) is thus **GRANTED IN PART AND DENIED IN PART**. Defendants must answer the surviving claims within fourteen days of this order.

**ORDERED** in Fort Myers, Florida on February 2, 2026.

Kyle C. Dudek
United States District Judge